IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:18CR10

BANITA BRANDISE SAFFORE,

        Petitioner.

MEMORANDUM OPINION

        Banita Brandise Saffore, a federal inmate proceeding pro se,

filed this motion under 28 U.S.C. § 2255 ("§ 2255 Motion, ECF

No. 134) to vacate, set aside, or correct her sentence.  In her

§ 2255 Motion, Saffore raises four grounds for relief:[1]

Claim One:      "Sentencing guidelines [were] incorrect based off
                incorrect    information    in    my    [Presentence
                Investigation Report] PSI" and counsel should have
                "addressed [this] matter." (Id. at 4.)

Claim Two:      "Ineffective assistance of counsel.  Counsel never
                contacted U.S. probation to get PSI corrected,
                counsel never filed past conviction motion to
                correct PSI and get recalculations." (Id. at 5.)

Claim Three:    "That there is no supporting evidence that I
                conspired to commit wire fraud.  Counsel failed to
                raise  the  fact  that  business  was  a  sole
                proprietorship  or  individual  entity  and  other
                issues addressing plea agreement."  (Id. at 7.)

Claim Four:     "Counsel failed to file a notice of appeal based
                upon the matters I presented."  Specifically, (a):

_____

        [1] The Court employs the pagination assigned by the CM/ECF
docketing system.  The Court corrects the spelling, punctuation,
and capitalization in the quotations from Saffore's submissions.

> "that the sentence imposed was greater than
> necessary to accomplish the goal;" and (b) "instead
> of running concurrently was [run] consecutively."
> (Id. at 8.)

The Government has filed the GOVERNMENT'S RESPONSE TO MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 ("Response," ECF No. 147.) Notwithstanding that Saffore received an extension of time in which to do so, she did not file a reply. For the reasons stated below, the § 2255 Motion (ECF No. 134) will be denied.

## I. PROCEDURAL HISTORY

On January 23, 2018, a grand jury indicted Saffore on one count of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 1343 & 1349 (Count One), five counts of Wire Fraud, in violation of 18 U.S.C. § 1343 (Counts Two through Six), and five counts of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts Seven through Eleven). (ECF No. 5, at 1–5.) The Indictment alleged that Saffore and her co-conspirators participated for at least five years in a scheme to file false tax returns. (Id. at 4–5.)

### A. Saffore's Guilty Plea

On April 9, 2018, Saffore pled guilty to Count One (the Conspiracy charge) and Count Eight (an Aggravated Identity Theft charge). (ECF No. 35 ¶ 1.) In her Plea Agreement, Saffore

2

acknowledged that she could receive up to twenty years of imprisonment on Count One and a "mandatory term of two years of imprisonment which must run consecutively to any other term of imprisonment imposed on any other count" for Count Eight.  (Id.) In exchange for her guilty plea, the Government agreed to dismiss the remaining nine charges.  (Id. ¶ 10.)  In the Statement of Facts accompanying the Plea Agreement, Saffore agreed that "the following facts are true and correct, and that had this matter gone to trial, the United States would have proven each of them beyond a reasonable doubt:"

     1.    Beginning prior to January 1, 2011, and continuing generally through on or about January 22, 2016, in the Eastern District of Virginia and within the jurisdiction of the Court, as well as elsewhere, defendant CHARLENE SAFFORE CANNON did unlawfully and knowingly conspire with others, known and unknown to the Grand Jury, to commit offenses contained within Chapter 63 of Title 18 of the United States Code; that is: to knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud transmitted and caused transmissions of writings, signs, and signals in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

     2.    On or about January 8, 2016, in the Eastern District of Virginia and within the jurisdiction of this Court, defendant BANITA BRANDISE SAFFORE aided, abetted, induced, counseled, and encouraged the unlawful possession and use, without lawful authority, of the means of identification of another person (that is, the name M.W. and M.W.'s date of birth), during and in relation to a felony violation of Title 18, United States Code, Section 1349.

3

3. Co-defendant Charlene Saffore Cannon is SAFFORE's mother. Sherin Lee Saffore (charged in this Court under docket number 3:18-cr-013-REP) is Cannon's sister and SAFFORE's aunt.

4. Between approximately January 2011 and January 2016, 34 IRS Forms 1040 (U.S. Individual Income Tax Return) were electronically filed with the IRS using on-line tax-filing software without the permission or knowledge of the individuals whose names appeared on the returns. These fraudulent returns often contained false information about the Schedule C income, dependents, and education expenses of the individuals purportedly filing the returns which inflated the refund due to the individuals. Five of these returns were filed through a static internet protocol (IP) address assigned to a house in Henrico County, Virginia. SAFFORE's aunt, Sherin Lee Saffore (charged in this Court under docket number 3:18-cr-013), resides at this house. The returns traveled outside the Commonwealth of Virginia while in route to the IRS. The IRS issued refunds in the total amount of $169,227 from these returns. Some of the refunds were directed into bank accounts belonging to SAFFORE. For instance:

A. A refund of $1,000 was directed into the Bank of America business account of "Bee & Q Services" on which SAFFORE was an authorized signer.

B. A refund of $3000 was directed into the Bank of America business account of a sole proprietorship bearing the name of another individual, but on which SAFFORE was an authorized signer.

C. Three refunds totalling [sic] over $7,000 were directed into the SunTrust Bank business account of "Banita Saffore doing business as Busy Bee Services," on which SAFFORE was an authorized signer.

D. Fifteen refunds totalling [sic] over $50,000 were directed into Wachovia Bank business account of "Banita Saffore doing business as Busy Bee Services." In other instances, the refunds were directed on to pre-paid debit cards.

5. Among the returns referenced in paragraph three was an IRS Form 1040 (U.S. Individual Income Tax Return) for the tax year 2015 bearing the name of M.W. that was electronically filed with the IRS using tax filing software on January 8, 2016. This Form 1040 bore the name of M.W. and was filed using M.W.'s date of

4

birth. The return was filed using the IP address assigned to Sherin Lee Saffore's residence. M.W. did not file this return and did not authorize SAFFORE or anyone else to file it. M.W. does not know SAFFORE and was unaware that the return had been filed.

6. The return referenced in paragraph five contained the following false representations:

A. That two individuals listed on the returns were M.W.'s sister and niece, and were M.W.'s dependents, when in fact, M.W. did not know them;

B. That M.W. had run a janitorial service business that generated $16,050 in gross receipts and $15,050 in net profit during the 2015 tax year, when in fact, M.W. had no such income;

C. That M.W. had incurred education expenses in the amount of $4,000 during the 2015 tax year, when in fact, M.W. had incurred no such expenses, and,

D. That based in part on the foregoing, M.W. was entitled to a refund of $6,421 from the IRS.

7. The IRS issued a refund in the amount of $6,421 in connection with the M.W. return referenced in paragraphs five and six. The refund was not sent to M.W.; rather, the IRS directed that sum of $6,306 (which accounted for certain transaction fees deducted from the refund) from the United States Treasury be placed on a pre-paid debit card bearing number xxxx xxxx xxxx 3755, which was issued by Santa Barbara Tax Product Group.

8. Between February 2 and February 15, 2016, debit card number xxxx xxxx xxxx 3755 was used to make purchases in the amount of $6,277.16 at retail businesses in the Richmond, Virginia Metropolitan area, including Kroger, Walmart, Macy's and Family Dollar store. Also among these purchases was a February 7, 2016 monthly payment in the amount of $96 for a storage unit SAFFORE had rented using her own name.

9. On February 4, 2016, federal agents interviewed SAFFORE in the parking lot of a Henrico County restaurant, a location suggested by SAFFORE during a telephone conversation earlier that day. Although SAFFORE was not in custody, prior to the interview, the agents advised SAFFORE of her Miranda rights, which she waived, agreeing to speak with agents. During the ensuing interview, she advised in part as follows:

A. SAFFORE prepared tax returns for friends and relatives. She had a business license for Busy Bee Services, which was a tax preparation business. She had been trained to prepare tax returns at Jackson Hewitt and had also read IRS publications on the filing of tax returns. SAFFORE had received from the IRS both a Tax Preparer Identification Number and an Electronic Filing Identification Number for Busy Bee.

B. SAFFORE had only prepared tax returns from 2011 to 2014. She did not keep copies of the returns she prepared, nor did she copy any of the information clients brought her for preparation of their returns, such as identification documents, Forms W-2, or social security cards.

C. The agents told SAFFORE that twelve individuals had complained about the filing of returns using their names and personal identifying information without their knowledge or consent. They also told SAFFORE that the refunds for those individuals had been deposited into her bank accounts, that the refunds had been applied toward apparent living expenses and cash withdrawals, and that the refunds had not been paid over to the complainants. SAFFORE denied filing returns without anyone's authorization and maintained the complainants were lying. She did not address the agents' assertions about the flow of funds into and out of her bank accounts.

10. On September 14, 2016, federal agents searched the Henrico County residence of Sherin Lee Saffore pursuant to a warrant issued by a United States Magistrate Judge. The search yielded, among other things, the following:

A. A handwritten list containing the names of individuals, many of whom had their personal identifying information misused for the filing of fraudulent tax returns without their knowledge or permission. Next to some of the names were handwritten notes such as dates and the term, "payout" or "No Card."

B. An address enclosure for a mailed pre-paid debit card issued in the name of S.B. (an individual who did not live at Sherin Saffore's residence) in connection with receipt of a tax refund.

C. A sheet of paper containing M.W.'s name, social security number, and date of birth, along with

6

those of other individuals who did not live at Sherin Saffore's residence.

D.   A sheet of paper with the handwritten names of various individuals, including Sherin Saffore, co-defendant Charlene Saffore Cannon, and SAFFORE.  Next to the names were written sums of money, such as, "$500 Banita."

E.   Tax client files.

11.  Several years before the search of [the] house, Sherin Saffore had filed tax returns for Busy Bee for a few months.  Sherin Saffore also ran her own business filing tax returns for clients.  Cannon lived with Sherin Saffore from late 2015 through early 2016. During that time, Cannon filed tax returns using either the computer at Sherin Saffore's house or Cannon's own personal laptop.  SAFFORE had checked the status of returns using the internet service at Sherin Saffore's house.  The tax client files seized by the agents on September 14, 2016 belonged to Busy Bee and were being stored at the house by Cannon.  Sherin Saffore, Cannon, and SAFFORE serviced many of their own individual clients.  However, on occasion they also gathered and shared information (including stolen names and personal identifying information) necessary to facilitate the filing of fraudulent returns.  They also paid referral fees to each other for this information.

12.  At various times during the life of the conspiracy, SAFFORE was incarcerated.

13.  The actions taken by the defendants as described above were taken willfully, knowingly, and with the specific intent to violate the law.  This statement of facts sets forth facts necessary to support the defendant's plea of guilty and does not necessarily relate all facts relevant to the charged offenses.

(ECF No. 36, at 1-7.)

During the Rule 11 plea hearing, Saffore stated under oath that she understood that she faced up to twenty years of incarceration on Count One, and three times she acknowledged that she understood that she would receive "a consecutive sentence of

two years imprisonment to follow any sentence that [she] would get on count one" meaning, "[she] ha[d] to get at least two years to follow on count two." (ECF No. 79, at 9-10; see id. at 14, 20.) Saffore also agreed that she understood what a conspiracy was and that meant "that [she] agreed with at least one other person to engage in a crime, and the crime would be wire fraud." (Id. at 10.) Saffore agreed that she had sufficient time to discuss the charges, the facts of the case, and any defenses with her attorney (id. at 11), and that he had "done everything necessary to allow [her] to make the important decision about whether or not to plead guilty . . . ." (Id. at 15.) When asked whether she understood that by pleading guilty she was "admitting all the essential elements of these two offenses, [she was] giving up all those rights that [the Court] just explained to [her], and [she was] saying, in effect, [she] committed those two crimes, and [she] may never again say that [she] did not do it," Saffore answered in the affirmative. (Id. at 18-19.) The Court asked Saffore:

    Q   Do you understand it also means that you are admitting not only you did what the government says you did but also that the government can prove it? Do you understand that?

    A   Yes, sir.

> Q    Are you intending to plead guilty to these two
> charges because you are, in fact, guilty of what the
> government says you did?
>
> A    Yes, sir.
>
> Q    Are you sure about that?
>
> A    Yes, sir.

(Id. at 19.)   Saffore agreed that she had reviewed the Plea Agreement with her attorney, that she understood everything in the agreement, and that it was the entire agreement.   (Id. at 20.) Saffore acknowledged that by pleading guilty she waived her right to appeal any sentence within the statutory maximum.   (Id. at 21-22.)

Saffore also represented under oath that she had reviewed the Statement of Facts with her attorney and that it "fairly and accurately represent[ed] the crime [she] committed here."   (Id. at 23.)   The Court found Saffore's guilty pleas "knowingly and voluntarily entered and supported by an independent basis in fact." (Id. at 25.)   The Court then accepted Saffore's guilty pleas and found her guilty of Counts One and Eight.   (Id. at 26.)

## C.    Failure To Appear Conviction And Sentencing

Before sentencing, the probation officer prepared a Presentence Investigation Report.   The Base Offense Level was 7; however, Saffore received a ten-level enhancement for the amount

9

of loss involved in her offense and a two-level enhancement because the offense involved ten or more victims. (ECF No. 59 ¶¶ 20-22.) With a three-level decrease for acceptance of responsibility, Saffore's Total Offense Level was 16 (id. ¶ 30), and her Criminal History Category was IV, resulting in a guidelines range of 33 to 41 months of incarceration for Count One, and a mandatory two-year consecutive sentence on Count Eight. (Id. ¶ 117.) Counsel lodged no objections to the calculation of the sentencing guidelines but argued that Saffore "should be treated as a Criminal History Category III versus IV." (ECF No. 63, at 1, 5-7.)[2]

Saffore, who had been released on conditions, failed to appear for sentencing that was scheduled for September 6, 2018. Therefore, on January 8, 2019, a grand jury indicted Saffore on an additional count, failure to appear ("2019 Count One"). See United States v. Saffore, No. 3:19cr03 (E.D. Va. filed Jan. 8, 2019). See id. ECF No. 12. 2019 Count One carried a statutory maximum sentence of ten years of incarceration, and any sentence imposed was required to run consecutive to any other sentence. (See ECF

---

[2] Amongst other 18 U.S.C. § 3353(a) factors, counsel argued that Saffore should not have received two points for committing an offense while on pretrial release for the instant case, and should not have received two points for a failure to appear charge that had actually been dismissed. (ECF No. 63, at 5-6.)

No. 99 ¶ 131); 28 U.S.C. § 3146(b)(1)(A)(i) & (2))). On August 5, 2019, Saffore pled guilty to that offense.[3]

The two cases were consolidated for sentencing. A new Presentence Investigation Report was prepared, and Saffore's Total Offense Level for Count One and 2019 Count One was 21, because she received a two-level enhancement for obstruction of justice and lost the benefit of the three-level decrease for acceptance of responsibility. (ECF No. 99 ¶¶ 26-32, 40.) With a Criminal History Category of IV, her guidelines range increased to 57 to 81 months of incarceration. (Id. ¶ 34.)

On October 31, 2019, the Court sentenced Saffore to 57 months of incarceration on Count One, the mandatory two years on Count Eight to run consecutive to the sentence on Count One, and an additional six months on 2019 Count One to run consecutive to the sentences on Counts One and Eight. (ECF No. 103, at 2.) Notwithstanding the appeal waiver in her Plea Agreement, Saffore appealed, arguing that her sentence was procedurally and substantively unreasonable. United States v. Saffore, 809 F. App'x

---

[3] After Saffore failed to appear for her sentencing on September 6, 2018, the Court issued an arrest warrant. See United States v. Saffore, No. 3:19cr03 (E.D. Va. filed Jan. 8, 2019), ECF No. 14, at 3. Saffore remained at large until May 30, 2019, when "Deputy United States Marshals went to an apartment in Riverdale, Georgia, where they believed they might find SAFFORE and another fugitive. The deputies knocked and announced their presence" and arrested Saffore. Id. ¶ 13.

11

140, 142 (4th Cir 2020).   The United States Court of Appeals for the Fourth Circuit found that Saffore knowingly and voluntarily waived her right to appeal her sentences for conspiracy and aggravated identify theft sentences and dismissed that portion of her appeal.   (Id.)   Although Saffore did not waive her right to appeal her sentence for failure to appear, the Fourth Circuit found that her sentence was procedurally and substantively reasonable. (Id. at 142-43.)

On July 21, 2019, the Court received Saffore's § 2255 Motion. As discussed below, Saffore's claims that counsel rendered ineffective assistance are meritless.

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

#### A.   Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense.   Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"   Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of Strickland to require the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Mere assertions by the movant, however, that he would not have pled guilty if he had received different advice from counsel are not dispositive of this issue. See United States v. Mora-Gomez, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (citations omitted). The Court must look to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any possible sentencing benefit to pleading guilty. See id. at 369-70.

Of course, in conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Therefore, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations and quotations omitted). Accordingly, the Fourth Circuit has admonished that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. No circumstances exist here that would lead the Court to consider Saffore's prior sworn statements as other than truthful. See id.

## B. Sentencing Claims

In Claim One, Saffore argues that: "Sentencing guidelines [were] incorrect based off incorrect information in my

14

[Presentence Investigation Report] PSI" and counsel should have "addressed [this] matter." (ECF No. 134, at 4.) Similarly, in Claim Two, Saffore contends: "Ineffective assistance of counsel. Counsel never contacted U.S. probation to get PSI corrected, counsel never filed past conviction motion to correct PSI and get recalculations." (Id. at 5.) Saffore has offered no details about what she perceived to be the incorrect information in her Presentence Investigation Report that her lawyer allegedly did not discuss with the Probation Officer (Claims One and Two).

In the run-up to Saffore's initially scheduled sentencing, counsel argued for a variance for a variety of reasons including that Saffore's criminal history category should be treated as a III, not a IV, because two of her prior offenses should not have counted in the calculation. (ECF No. 63, at 5-7.) The Court rejected counsel's argument for a variance and held that the criminal history category was correctly calculated.

Although the Court found no reason to impose a variance (id. at 9-11), the Court nonetheless sentenced Saffore to 57 months—the bottom of the guidelines for Count One, the mandatory minimum of two years for Count Two, and a six-month sentence for 2019 Count One, which was slightly less than half of the 95 months sentence urged by the Government. (Id. at 19-20; see id. at 7.) On this record, the Court cannot find that counsel was deficient, or that

15

Saffore suffered any resulting prejudice.  See Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of habeas action appropriate where it "stated only bald legal conclusions with no supporting factual allegations").  Accordingly, Claims One and Two will be dismissed.

C.  Sufficiency Of The Evidence Claim

In Claim Three, Saffore argues:  "That there is no supporting evidence that I conspired to commit wire fraud.  Counsel failed to raise the fact that business was a sole proprietorship or individual entity and other issues addressing plea agreement."  (ECF No. 134, at 7.)  Saffore's argument is belied both by her validly entered plea of guilty and the stated evidence of her guilt.

First, Saffore, not counsel, chose to plead guilty to conspiracy to commit wire fraud after having discussions with counsel about the charges, the evidence, and any potential defenses.  During her plea hearing, Saffore agreed that she understood what a conspiracy was, and that the Government had sufficient evidence to prove that she had engaged in a conspiracy to commit wire fraud.  The Court asked Saffore at least three times in her plea hearing whether she was pleading guilty because she was in fact guilty of conspiracy to commit wire fraud, and each time she agreed.  Saffore also agreed that she had reviewed the

16

charges with counsel and understood them.  Saffore even agreed that, by pleading guilty, "[she] may never again say that [she] did not do it."  (ECF No. 79, at 18-19.)  The Court found her guilty plea knowingly and voluntarily entered.

Saffore's allegations here directly contradict her sworn statements under oath that the evidence was sufficient to show she was guilty of conspiracy, that she was in fact guilty of conspiracy, and that she was satisfied with counsel's performance. Thus, they are consequently, "palpably incredible and patently frivolous or false." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations and quotations omitted).  The Court fails to discern, and Saffore has not explained, how counsel was deficient with respect to her guilty plea to conspiracy to commit wire fraud.  Saffore also demonstrates no resulting prejudice from counsel's actions.  Accordingly, Claim Three is meritless and will be dismissed.[4]

---

[4] In addition, the record shows that Saffore clearly engaged in a conspiracy to commit wire fraud with Sherin Saffore and Cannon, as opposed to a mere sole proprietorship.  Although, the three women often filed fraudulent tax returns on their own, they also shared information about clients and paid one another referral fees.  A search of Sherin Saffore's house turned up a list with a tally of the amounts stolen from the IRS divvied up between each woman.  Saffore, Sherin Saffore, and Cannon were clearly working together to commit wire fraud by filing fraudulent tax returns. Saffore fails to identify any argument counsel could have made to counter that evidence and show that she was working entirely on

**D.  Appeal Claim**

In Claim Four, Saffore argues that: "Counsel failed to file a notice of appeal based on the matters I presented." Including (a): "that the sentence imposed was greater than necessary to accomplish the goal;" and (b) "instead of running concurrently was [run] consecutively." (Id. at 8.)  In the appeal, counsel argued that Saffore's sentence was procedurally unreasonable "because the district court failed to adequately explain its decision to sentence her to a within-Guideline sentence on the conspiracy count and a separate sentence on the failure to appear count." United States v. Saffore, 809 F. App'x 140, 143 (4th Cir 2020).  Counsel also argued that Saffore's sentence was substantively unreasonable because it was longer than necessary.  See id.  Thus, counsel argued exactly what, in Claim Four (a), Saffore says was not presented.  To the extent that Saffore now says that she wanted counsel to make a different argument about the reasonableness of her sentence, she has failed to identify that argument here.  That, of course, is fatal to her claim.  On Claim Four (a) Saffore has not demonstrated any deficiency of counsel, or any resulting prejudice.  Therefore, Claim Four (a) will be dismissed.

---

her own.  In sum, Saffore fails to demonstrate any deficiency of counsel or resulting prejudice.

Second, to the extent that Saffore instructed counsel to raise an argument on appeal that her sentences should have run concurrently, counsel reasonably eschewed advancing that argument because it was meritless. By statute, the sentences for aggravated identity theft and failure to appear were required to be run consecutive to any other sentence. Therefore, had counsel raised the argument that the sentences should have run concurrently, the argument would have been entirely frivolous and guaranteed to fail. Thus, Saffore fails to show any deficiency of counsel or resulting prejudice with respect to this claim. Accordingly, Claim Four (b) lacks merit and will be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the § 2255 Motion (ECF No. 134) will be denied. A certificate of appealability will be denied. The action will be dismissed.

The Clerk is directed to send a copy of the Memorandum Opinion to Saffore and counsel for the Government.

It is so ORDERED.

_____  /s/   REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  September 18, 2023

19